**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: May 7, 2026
Date Decided: May 29, 2026

Kevin A. Guerke, Esq.
Skyler A. C. Speed, Esq.
Lily Bohlke, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

> RE: *Shore Community Energy LLC v. MassAmerican Development LLC*,
> C.A. No. 2025-1163-BWD

Dear Counsel:

This letter opinion resolves Shore Community Energy LLC's ("Shore Community" or "Plaintiff") Motion for Default Judgment as to Damages (the "Motion"). Pl.'s Mot. for Default J. as to Damages [hereinafter Mot.], Dkt. 63.

By way of brief background, Shore Community established four solar energy and storage companies to develop solar panel farms in rural Maryland: Rosehip Cleantech, LLC ("Rosehip"), Greengage Cleantech, LLC ("Greengage"), Sunberry Cleantech, LLC ("Sunberry"), and Lumia Cleantech, LLC ("Lumia," and with Rosehip, Greengage, and Sunberry, the "Solar Companies"). Verified Am. Compl. [hereinafter Am. Compl.] ¶¶ 1, 16, 55, 98, 140, Dkt. 25. In 2024, Shore Community entered into four Membership Interest Purchase Agreements with defendant

MassAmerican Development LLC ("MassAmerican"): the "Rosehip MIPA," the "Greengage MIPA," the "Sunberry MIPA," and the "Lumia MIPA" (collectively, the "MIPAs"). *Id.* ¶¶ 16–18, 55–57, 98–100, 140–42. Under the MIPAs, Shore Community agreed to sell, transfer, and convey a majority of its membership interests in the Solar Companies to MassAmerican. *Id.* ¶ 2. The MIPAs required MassAmerican to pay a "Purchase Price" and to satisfy other financial obligations necessary to bring the solar projects to fruition. *Id.* The MIPAs further state that if MassAmerican "fails to make any required payment," Plaintiff may

> repurchase the entire Membership Interest held by [MassAmerican] in the Company for one dollar ($1.00), in which case the Membership Interests in the Company, as well as any and all Project Documents, and all right, title, and interest to the Project originally transferred to [MassAmerican] at Closing, shall be retransferred and delivered back to [Shore Community] within ten (10) business days, in better or substantially the same conditions in which they were at Closing and free and clear of all Liens . . . .

Am. Compl., Ex. 1 [hereinafter MIPA] § 6.4(d).[1]

The transactions contemplated under each of the MIPAs closed on December 12, 2024, and "Closing Payments" were due between December 12, 2024, and March 15, 2025. Am. Compl. ¶¶ 20, 22, 58, 63, 102, 106, 144. MassAmerican

---

[1] Because the provisions cited appear in each of the four MIPAs, this letter opinion cites to just one of the MIPAs for brevity's sake.

failed to make the Closing Payments or adjusted Closing Payments. *Id.* ¶¶ 22, 63, 106, 144.

On October 10, 2025, Plaintiff initiated this action through the filing of a Verified Complaint (the "Complaint") and moved for expedited proceedings in advance of a hearing on a motion for preliminary injunction. Verified Compl.; Pl.'s Mot. for a Prelim. Inj., Pl.'s Mot. to Expedite Proceedings, Dkt. 1. After MassAmerican failed to respond to the Complaint, Plaintiff moved for default judgment. Pl.'s Mot. for Default J., Dkt. 10. At a November 25 hearing, the Court deferred decision on the motion for default judgment to permit Plaintiff to amend the Complaint. Tr. of 11-25-25 Oral Arg, at 14:17–15:6, Dkt. 23. On December 10, Plaintiff filed the operative Verified Amended Complaint (the "Amended Complaint"). Am. Compl., Dkt. 25.

The Amended Complaint alleges that MassAmerican breached each of the MIPAs by:

- failing to pay the Purchase Price for the membership interests;

- violating Plaintiff's contractual right to repurchase the membership interests for $1 due to MassAmerican's failure to pay the Purchase Prices;

- failing to comply with its obligation to take all actions and execute all instruments necessary to affirm Plaintiff's repurchase of the membership interests and to retransfer those membership interests to Plaintiff free and clear of all liens;

- failing to satisfy all financial and operational obligations related to the solar projects by not performing its obligations to pay rents due under the applicable leases, by not paying Plaintiff for the development expenses invoiced for the solar projects, and by failing to make other required payments; and

- failing to comply with Plaintiff's request to furnish reasonable proof that it had sufficient funds to perform all obligations of the solar projects and under the MIPAs.

Am. Compl. ¶¶ 3, 266–92. Among other relief, the Amended Complaint sought an injunction requiring MassAmerican to retransfer the membership interests to Plaintiff free and clear of all liens, as well as damages. *Id.* ¶¶ 266–92.

After multiple hearings and several submissions, on December 22, I entered a default judgment on liability under Counts I through IV of the Amended Complaint and directed MassAmerican to transfer the membership interests back to Plaintiff. Dkt. 34. On March 31, 2026, Plaintiff filed the present Motion, in which Plaintiff seeks an award of damages for breach of the MIPAs. Mot. ¶ 14.

Indemnification provisions in the MIPAs foreclose Plaintiff's request for damages. Section 7.2(g) of the MIPAs states that "the indemnities set forth in this Article 7 shall be the exclusive remedies" for a failure to perform any agreement in the MIPAs:

> After the Closing, to the extent permitted by Law and except with respect to claims based on intentional fraud or criminal activity and claims for equitable remedies (including specific performance), the

indemnities set forth in this Article 7 shall be the exclusive remedies of the indemnified Parties for any breach of any representation or warranty or nonfulfillment or failure to be performed of any covenant or agreement contained in this Agreement or any other agreement entered into in connection herewith or otherwise arising from the transactions contemplated herein.

MIPA § 7.2(g). Section 7.1 provides a six-month survival period for an indemnification claim not attributable to negligence, fraud, or willful misconduct:

Each Party shall indemnify, defend and hold harmless, release, acquit, and forever discharge the other Party and its trustees, shareholders, members, managers, officers, employees, affiliates, successors and assigns, agents, representatives, and independent contractors, from and against any and all reasonable and documented out of pocket costs, claims, liabilities, demands, damages, losses, expenses (including reasonable attorneys' fees), actions, causes of action, suits or judgments of any kind ("Losses"), that are known or unknown, now or accruing in the future, arising out of, or in any way related to or concerning: a) any claim by a third party for any physical damage to or any physical destruction of property, or death of or bodily injury to any person, but only to the extent caused by the negligence or willful misconduct of the indemnifying Party, the indemnifying Party's employees acting within the scope of their employment, and any other person for whom or which the indemnifying Party is legally liable; b) any material breach by the indemnifying Party of any representation or warranty made herein; or c) any nonfulfillment of or failure to perform any covenant or agreement on the part of the indemnifying Party contained in this Agreement. ***Notwithstanding the foregoing, the indemnity provided under this Section 7.1 shall i) expire at six (6) months following the Closing Date***, and ii) not extend to Losses to the extent attributable to negligence, fraud, or willful misconduct of an indemnified Party.

*Id.* § 7.1 (emphasis added). Further, Section 7.2(a) requires a party seeking indemnification to provide notice before expiration of the survival period:

> ***No indemnity shall be payable under this Article 7 with respect to Losses for which the indemnified Party has not provided the indemnifying Party written notice of a claim or indemnity***, as applicable, with respect to such claim, setting forth in reasonable detail the specific facts and circumstances pertaining thereto as soon as practical following the time at which the indemnified Party discovered such claim (except the failure to promptly deliver such notice of the claim or indemnity shall not be a waiver of the indemnified Party's rights under this Article 7, except to the extent the indemnifying Party is prejudiced by any delay in the delivery of such notice), ***and in any event prior to the expiration of the survival period specified in Section 7.1.***

*Id.* § 7.2(a) (emphasis added).

Under Section 7.2(g), indemnity was the exclusive remedy for a failure to perform under the MIPAs, including MassAmerican's failure to pay the Purchase Price. Closing occurred on December 12, 2024, meaning the survival period for an indemnity claim expired on June 12, 2025. The alleged breaches occurred between December 12, 2024, and March 15, 2025, within the survival period, but Plaintiff waited to file the Complaint until seven months later, on October 10, 2025. As a result, Plaintiff's request for contract damages is time-barred under the MIPAs.

Plaintiff raises two arguments to avoid this result. First, Plaintiff argues that Sections 7.2(a) and 7.2(g) "work together, making 'the indemnities set forth in this Article . . . the exclusive remedies' for the first six months after the Closing Date, at which point the non-breaching party is not bound by those exclusive remedies and

is entitled to any remedies available under the MIPAs or at law." Pl.'s Ltr. to the Ct.

[hereinafter Ltr.] at 2, Dkt. 71. This argument is inconsistent with the plain language

of the MIPAs, which limits Plaintiff's monetary remedy to indemnity *and* requires

that such remedy be sought within the six-month survival period. *See, e.g.*, *Supernus*

*Pharms., Inc. v. Reich Consulting Gp., Inc.*, 2021 WL 5046713, at *1–2 (Del. Ch.

Oct. 29, 2021) (ORDER) (dismissing indemnification claims where the plaintiff "did

not bring a timely claim for breach of [a covenant] before [the indemnity period]

expired"); *HBMA Hldgs., LLC v. LSF9 Stardust Hldgs. LLC*, 2017 WL 6209594, at

*6–7 (Del. Ch. Dec. 8, 2017) (finding "indemnification claims [we]re time barred"

where the plaintiff failed to "give[] proper notice" of its claim "before the General

Survival Date").[2]

Second, Plaintiff argues that the indemnity clause does not apply because its

request for contract damages is really a demand for "specific performance" of

MassAmerican's contractual obligation to pay certain costs. *See* Ltr. at 3–4

("Plaintiff is not simply seeking damages for breach of contract; it is asking the court

to order [MassAmerican] to specifically perform its contractual obligations by

---

[2] Plaintiff points out that some obligations under the MIPA do not arise until after the six-month survival period expires, but does not contest that the breach here occurred well within the survival period. Ltr. at 2.

making [monetary] payments to Plaintiff . . . .").  Under Delaware law, the equitable

remedy of specific performance does not encompass an order to pay money; instead,

"[t]he purpose of specific performance is to address 'situations where the assessment

of money damages is impracticable or somehow fails to do justice.'"  *Graciano v.*

*Abode Healthcare, Inc.*, 2024 WL 960946, at *4 (Del. Ch. Mar. 4, 2024) (quoting *E.*

*Balt LLC v. E. Balt US, LLC*, 2015 WL 3473384, at *2 (Del. Ch. May 28, 2015)).

The Court has already ordered specific performance by requiring MassAmerican to

return the membership interests to Plaintiff.  Plaintiff now seeks "Default Judgment

as to *Damages*."  Dkt. 63 (emphasis added).  As set forth above, the MIPA forecloses

this request.

Even if the Court were to ignore the MIPAs' indemnity provisions, Plaintiff

has not met its burden to prove entitlement to the damages it seeks.  Plaintiff seeks

damages for unpaid rent, development expenses, equipment deposits, and IRS "safe

harboring" expenses.  Mot. ¶¶ 21–39.  Although Plaintiff seeks damages for unpaid

rent, Plaintiff is not a party to the leases in question and has not shown how it was

harmed by MassAmerican's failure to make the rent payments.  *See, e.g.*, Am.

Compl., Ex. 6 at 1 (defining "Owner" as "Flonium Power LLC" and "Tenant" as

"Rosehip Cleantech LLC").  As for any expenses and deposits Plaintiff did in fact

incur, Plaintiff would be unjustly enriched if the Court ordered MassAmerican to

both return the membership interests *and* pay the costs for projects in which MassAmerican no longer owns an interest. As the owner of the membership interests, Plaintiff will benefit from the expenses incurred in developing the properties, and has not explained why, having recovered the membership interests, it should be permitted to double-recover for these costs. *Cf. Prestancia Mgmt. Gp., Inc. v. Virginia Heritage Found., II LLC*, 2005 WL 1364616, at \*5 n.39 (Del. Ch. May 27, 2005) (explaining that a party seeking rescission and contract damages has "an election of remedies quandary" because equity prevents a double recovery).

For the reasons explained above, the Motion is DENIED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)